IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78361-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RAPHAEL HENSON, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 12, 2019 |
| | ) | |

MANN, A.C.J. — Raphael Henson appeals his conviction for violation of the Uniform Controlled Substances Act (UCSA), ch. 69.50 RCW. He argues that the court erred by admitting improper opinion testimony and that his counsel was ineffective. He also argues that the court should strike his deoxyribonucleic acid (DNA) collection fee. We affirm Henson's conviction and remand to the trial court to strike the DNA collection fee.

I.

On November 9, 2016, several police officers were conducting an operation to buy illegal drugs in Seattle. When police are conducting operations to target an area with a high level of drug dealing, officers will buy drugs from a number of people, identify the sellers, and then later arrest the sellers.

On November 9, 2016, a man sold methamphetamine to Detective Matthew Volpe, an undercover police officer, at a McDonald's. The man told Detective Volpe that his name was "Raggooey."

Volpe tasked a uniformed deputy, Austin Peterson, to attempt to identify the man. RP 68-69. Peterson successfully obtained the man's identification and reported to Volpe that the man's name was Raphael Henson. Peterson provided Henson's middle initial and birthdate from his identification. Volpe then looked up a Facebook photo for Henson and verified that it was the same person that he had purchased methamphetamine from in the McDonald's.

Henson was charged with one count of violation of the UCSA for allegedly delivering methamphetamine on November 9, 2016. Henson denied selling methamphetamine to Volpe. He said that he often lost his identification cards. Henson denied going by the nickname "Raggooey."

Defense counsel moved in limine to suppress all opinion testimony.

> The defense requests that the police officer witnesses be strictly limited to descriptions of what they personally observed and not extend any opinion unless their expert qualification to make such an opinion is established. Specifically, the defense requests that police officers not be permitted to testify that they saw gestures or behavior that was consistent with a drug transaction, but that officers limit their testimony to the facts of what they did or did not observe.

The court granted this motion, to the extent that the officers could testify that based on their training and experience, certain behaviors were consistent with meth use. However, the officers could not testify that certain behaviors were consistent with a drug deal.

2

Defense counsel also moved to exclude one officer, Detective Jeff Hancock, from testifying that he identified Henson from photographs. Defense counsel argued that it was opinion testimony for Hancock to testify he looked at Henson at the scene and then looked at identification photos and then confirmed that he is the same person. The State argued that Detective Hancock should be permitted to testify that in his opinion, Henson was the person involved in the drug sale based on his booking photo because issues involving identity or testimony in regards to identity are very probative. The trial court reserved ruling on the issue, noting that it hoped to have a decision by opening statements. The parties never revisited the issue and testimony commenced without any ruling or further objections.

At trial, Detective Volpe testified that Deputy Peterson was able to identify Henson. The defense objected to this testimony, which was overruled. Detective Volpe testified that he had looked up Henson's Facebook page after the drug buy and recognized Henson as the man who sold him the drugs. Someone referred to Henson as "Raggooey" on the Facebook page. After Henson objected to hearsay testimony, the court gave a limiting instruction.

Detective Robell Ghrmai was positioned inside the restaurant and he identified Henson in court as the person he observed speaking with Detective Volpe. Detective Gerald Meyer observed the interaction from a nearby vehicle and he identified Henson in court. Detective Chris Adams took several photos of Henson outside the McDonald's and he identified Henson in court.

The State called Detective Hancock as the State's final witness. Detective Hancock testified about his identification of Henson. Detective Hancock observed the

3

interaction between Detective Volpe and Henson from a parking lot using binoculars. Detective Hancock then looked up Henson's booking photo to confirm his identity. Detective Hancock also identified Henson in court.

Henson was convicted as charged. The court ordered Henson to pay $600 in legal financial obligations, including a $100 DNA database fee. Henson appeals.

II.

Henson argues that Detective Volpe's and Detective Hancock's testimony identifying Henson constituted improper opinion testimony. The State argues that Henson did not preserve this error for appeal. We disagree with Henson and agree with the State that Henson did not preserve this issue on appeal.

We review the admission of evidence by a trial court for abuse of discretion. State v. Redmond, 150 Wn.2d 489, 495, 78 P.3d 1001 (2003). A party may not raise an objection not properly preserved at trial absent manifest constitutional error. State v. Powell, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). "We adopt a strict approach because trial counsel's failure to object to the error robs the court of the opportunity to correct the error and avoid a retrial." Powell, 166 Wn.2d at 82. A manifest error has "practical and identifiable consequences in the trial of the case." Powell, 166 Wn.2d at 84. The appellant may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial. Powell, 166 Wn.2d at 83.

"When an evidentiary ruling is pursuant to a motion in limine, only the losing party is deemed to have a standing objection and need not specifically object at trial to preserve the issue for appeal." State v. Finch, 137 Wn.2d 792, 819-20, 975 P.2d 967

(1999). When a party fails to object to testimony, an evidentiary error is not preserved for appeal. Finch, 137 Wn.2d at 819.

A lay witness can testify to matters about which they have personal knowledge. ER 602. Lay witness testimony is limited to "opinions or inferences which are rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge." ER 701.

## A.

Henson argues that Detective Volpe's identification was preserved when the trial court ruled on Henson's motion in limine on opinion testimony. However, the motion in limine covered opinion testimony about whether behavior was consistent with drug dealing, not identification. Because identification was not covered in the motion ruling, Henson needed to contemporaneously object to the testimony. Henson's attorney made a hearsay objection which was overruled. Neither the motion in limine nor the hearsay objection concerned Detective Volpe's identification of Henson. Because Henson failed to object to the testimony, the error was not preserved for trial.

Further, Detective Volpe's testimony did not constitute manifest error because his identification testimony was proper lay opinion testimony under ER 701.

## B.

Henson next contends that the trial court erred by failing to expressly rule on the defense's motion to exclude Detective Hancock's testimony identifying Henson. But after the trial court reserved ruling on the issue, defense never revisited the issue. Indeed, defense counsel asked Detective Hancock about his identification of Henson

from the booking photos during cross-examination. Because Henson did not object to this testimony, this issue was not preserved on appeal.

Detective Hancock's testimony also did not constitute manifest error because his testimony was proper lay opinion testimony under ER 701.

III.

Henson next asserts that if we find that a contemporaneous objection was necessary during Detective Volpe's testimony, defense counsel's failure to object constituted ineffective assistance. Henson also argues that defense counsel was ineffective by cross-examining Detective Hancock about identifying Henson from a previous booking because it informed the jury that Henson had a criminal record.

We review ineffective assistance of counsel claims de novo. State v. A.N.J., 168 Wn.2d 91, 109, 225 P.3d 956 (2010). To demonstrate ineffective assistance of counsel, the defendant must show "(1) that his counsel's performance fell below an objective standard of reasonableness and, if so, (2) that counsel's poor work prejudiced him." A.N.J., 168 Wn.2d at 109 (citing Strickland v. Washington, 46 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). The defendant must demonstrate both deficient performance and prejudice. State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). To demonstrate deficient performance, the defendant must show that the attorney's conduct fell below an objective standard of reasonableness. State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). The defendant must demonstrate that the attorney did not have a strategic or tactical reason in failing to object. State v. Klinger, 96 Wn. App. 619, 623, 980 P.2d 282 (1999).

To demonstrate prejudice, the defendant must show "there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." Hendrickson, 129 Wn.2d at 78. We presume that the defendant was properly represented. Hendrickson, 129 Wn.2d at 77-78.

We do not need to decide whether defense counsel's failure to object to Volpe's testimony was unreasonable or strategic. Any potential error was not prejudicial because there was overwhelming evidence confirming Henson's identity. Detectives Ghrmai, Meyer, Adams, and Hancock all identified Henson at trial. The State also admitted 20 photographs that Detective Adams took while surveilling Henson, which included high quality images of Henson's face. Finally, Henson identified himself as "Raggooey," a nickname also used on his Facebook profile.

Similarly, any potential error by defense counsel in eliciting testimony from Volpe concerning a prior booking photo of Henson was not prejudicial. Henson had already been impeached with evidence of his prior convictions for crimes of dishonesty. Further, the jury was instructed that it should not consider Henson's prior convictions as substantive evidence of his guilt. Jurors are presumed to follow the court's instructions. State v. Kalebaugh, 183 Wn.2d 578, 586, 355 P.3d 253 (2015).

Because Henson has failed to demonstrate prejudice, his argument for ineffective assistance of counsel fails.

IV.

Henson argues that the $100 DNA collection fee imposed by the trial court should be stricken because Henson was indigent at sentencing. The State concedes.

We accept the State's concession and remand to the trial court to strike the DNA collection fee.

House Bill 1783 amended the discretionary LFO statute to prohibit courts from imposing discretionary costs on a defendant who is indigent at the time of sentencing. State v. Ramirez, 191 Wn.2d 732, 746, 426 P.3d 714 (2018). HB 1783 also amended RCW 43.43.7541, the statute controlling the imposition of a DNA collection fee. A conviction for a felony "must include a fee of one hundred dollars unless the state has previously collected the offender's DNA as a result of a prior conviction." RCW 43.43.7541. "The DNA database fee is no longer mandatory if the offender's DNA has been collected because of a prior conviction." Ramirez, 191 Wn.2d at 747.

The State concedes that their records show that Henson's DNA was previously collected and is on file with the Washington State Patrol Crime Lab. Therefore, the DNA collection fee is no longer mandatory and cannot be imposed on an indigent defendant. For this reason, we remand to the trial court to strike the $100 DNA collection fee.

We affirm Henson's conviction and remand to the trial court to strike the DNA collection fee.

Mann, ACJ

WE CONCUR:

8