# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53717-6-II |
| Respondent, | |
| v. | |
| RANDY WAYNE BELL, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — A jury found Randy W. Bell guilty of three counts of harassment of a criminal justice participant and two counts of obstructing a law enforcement officer.  He appeals his harassment convictions, arguing that the trial court erred in admitting evidence of an officer safety alert on Bell under ER 403 and ER 404(b).  Bell also appeals one of his obstructing a law enforcement officer convictions, arguing that there is insufficient evidence to support the conviction.  We affirm.

## FACTS

On March 23, 2019, United States Forest Service Officer Andrew Larson observed an all-terrain vehicle (ATV) being driven in an area closed to motorized vehicles.  He followed the ATV and was able to clearly see the driver, who was later identified as Bell.

Officer Larson approached Bell, and Bell began walking towards Larson "pretty fast."  1 Verbatim Report of Proceedings (VRP) (July 2, 2019) at 71.  Bell got within one foot of Larson and told him that he had been a victim of a violent crime and that if Larson put his hand on his gun then Bell would "put [him] down."  1 VRP (July 2, 2019) at 73.  At this point, Bell was physically leaning over Larson, who is five feet, ten inches tall, compared to Bell who is six feet, seven inches

tall. Larson took Bell's statement as a death threat. Larson backed out of the situation, returned to his truck, and called back up. A backup officer arrived and the two attempted to locate Bell, but they were unsuccessful.

On March 28, Officer Larson went to Bell's residence. He was joined by Lewis County Sheriff's Office deputies Daniel Riordan and Jared Kasinger, and Washington State Patrol officer Kaleb Ecklund.

Officer Larson testified that when he arrived at Bell's residence, he learned there was an officer safety alert[1] regarding Bell. Officers were warned that Bell owns a weapon and that a minimum of two officers were required when approaching him.

Due to safety concerns, the officers had dispatch call Bell's residence to attempt to have Bell come outside but were unsuccessful. The officers went throughout the neighborhood looking for Bell. Officer Larson stood outside Bell's residence to make sure Bell did not exit the residence. After approximately a half-hour, Bell exited the fenced inside yard of the residence and started to approach Larson. Larson yelled at Bell to stop and put his hands up, but Bell did not immediately put his hands up and continued to approach Larson. Larson yelled at Bell a second time to stop and put his hands up. Bell put his hands up but continued to move towards Larson.

Deputy Kasinger and Deputy Ecklund ran back to Officer Larson's location and observed that Bell was agitated that the officers were there. Bell would not comply with Larson's orders. Kasinger told Bell to keep his hands visible and get down on the ground. He explained that the officers had probable cause to arrest for a threat on a police officer. Bell inquired who the threat was on, and Deputy Ecklund shined his flashlight on Larson. Bell then called Larson "all sorts of

---

[1] Also referred to as an officer safety flag.

names" and stated "that he would put [Larson and Kasinger] down." 2 VRP (July 3, 2019) at 183-84.[2]

When Deputy Riordan returned to Bell's residence, he observed the other three officers with their backs to Riordan and their flashlights on Bell. Riordan ran toward the officers "due to the fact that it appeared that [Bell] was not following verbal commands that they were giving him at that time." 2 VRP (July 3, 2019) at 165. Riordan ordered Bell onto the ground. Bell told Riordan that he had "bad knees." 2 VRP (July 3, 2019) at 173. Riordan permitted Bell to stand while he handcuffed him.

The State charged Bell with three counts of harassment of a criminal justice participant and two counts of obstructing a law enforcement officer. Count One was for Bell's conduct harassing Officer Larson on March 23. Count Two was for Bell's conduct harassing Deputy Kasinger on March 28. Count Three was for Bell's conduct harassing Larson on March 28. Count Four was for Bell's obstructing law enforcement on March 23, and Count Five was for obstructing law enforcement on March 28.

Prior to trial, Bell filed a motion in limine to exclude any evidence that there was an officer safety alert regarding Bell. Bell argued the alert would make "the water . . . too muddy" because the State would have to show "all of these officers were possibly aware of it." 1 VRP (July 2, 2019) at 18. He also vaguely argued there was a "hearsay" issue with the information that resulted in the officer safety alert. 1 VRP (July 2, 2019) at 17. Bell provided no argument regarding ER 403 or ER 404(b).

---

[2] Bell argues the arrest only took "30 seconds." Br. of Appellant at 5. However, his citations to the record do not support his assertion. Indeed, the only reference to 30 seconds was testimony from Deputy Ecklund that Deputy Riordan showed up "30 seconds a minute" after the other three officers arrived. 2 VRP (July 3, 2019) at 216.

The trial court denied Bell's motion, stating "It's prejudicial, but I will allow, given the elements of the alleged crime, for you to present to the jury that there was an officer safety alert and whether or not that alert included the fact that he owned firearms, I will allow that as well." 1 VRP (July 2, 2019) at 22-23. Bell requested a curative instruction because Officer Larson would not have known about the alert at the March 23 encounter. The court stated that it would revisit the matter when discussing jury instructions.

During trial, Officer Larson testified that on March 28, he was informed that there was an officer safety alert on Bell. Bell objected, and the court allowed the testimony. There was no mention of ER 403 or ER 404(b).

Trial court instructed the jury that the officer safety alert regarding Bell may only be considered "for the purpose of determining the state of mind of witnesses" and not "for any other purpose." Clerks Papers at 83.

The jury found Bell guilty as charged. Bell appeals.

ANALYSIS

A.    EVIDENTIARY ERROR

For the first time on appeal, Bell cites ER 403 and ER 404(b) to argue the trial court abused its discretion by admitting evidence that there was an officer safety alert on Bell. Bell has not preserved this issue for review.

1.    Legal Principles

We review evidentiary rulings and the decision to exclude evidence for abuse of discretion. *State v. Garcia*, 179 Wn.2d 828, 846, 318 P.3d 266 (2014). A trial court abuses its discretion if its decision is manifestly unreasonable or based upon untenable grounds or reasons. *Id*.

Under RAP 2.5(a)(3), a party may not raise an error for the first time on appeal unless it is a "manifest error affecting a constitutional right." "[T]o qualify as a claim of manifest error affecting a constitutional right, the defendant must identify the constitutional error and show that it actually affected his or her rights at trial." *State v. Lamar*, 180 Wn.2d 576, 583, 327 P.3d 46 (2014). "An evidentiary error, such as erroneous admission of ER 404(b) evidence, is not of constitutional magnitude." *State v. Powell*, 166 Wn.2d 73, 84, 206 P.3d 321 (2009).

A party who objects to evidence on one ground may not raise a different ground on appeal. *State v. Mason*, 160 Wn.2d 910, 933, 162 P.3d 396 (2007), *cert. denied*, 553 U.S. 1035 (2008). Courts will not reverse a trial court's decision to admit evidence where the defendant argues for reversal based on an evidentiary issue not raised at trial. *Powell*, 166 Wn.2d at 82. In *Powell*, our Supreme Court held, "We adopt a strict approach because trial counsel's failure to object to the error robs the court of the opportunity to correct the error and avoid a retrial." *Id.*

2.      Issue Not Preserved

Here, Bell argues for the first time that under ER 403 and ER 404(b) the trial court abused its discretion by admitting evidence that there was an officer safety alert on Bell. But nowhere in our record does it show an objection below based on ER 403 or ER 404(b) to this evidence. Therefore, based on *Powell*, this issue is not properly before us. 166 Wn.2d at 82.

B.      SUFFICIENCY OF THE EVIDENCE

Bell next argues that sufficient evidence does not support his conviction on Count Five for obstructing a law enforcement officer on March 28, 2019, because his actions were not willful. We disagree.

5

1. Legal Principles

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. Credibility determinations are made by the trier of fact and are not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

Under RCW 9A.76.020(1), a person is guilty of obstructing a law enforcement officer "if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties."

2. Sufficient Evidence Exists to Support Conviction

Here, Officer Larson testified that due to safety concerns, the officers had dispatch call Bell's residence to attempt to have Bell come outside, but they were unsuccessful. Larson waited outside Bell's residence while the other officers searched the neighborhood.

After approximately a half-hour, Bell exited the fenced inside yard of the residence and started to approach Officer Larson. Larson yelled at Bell to stop and put his hands up, but Bell did not immediately put his hands up and continued to approach Larson. Larson yelled at Bell a second time to stop and put his hands up. Bell put his hands up but continued to move towards Larson.

Deputy Kasinger ran back to Officer Larson's location and observed that Bell was agitated that the officers were there. Bell would not comply with Larson's orders. Kasinger told Bell to keep his hands visible and get down on the ground. Deputy Riordan then arrived at Bell's residence, he observed the other three officers, with their backs to Riordan, and their flashlights

on Bell. Riordan ran toward the officers "due to the fact it appeared that [Bell] was not following verbal commands that they were giving him at that time." 2 VRP (July 3, 2019) at 165. Riordan ordered Bell onto the ground. Bell told Riordan that he had "bad knees." 2 VRP (July 3, 2019) at 173. Riordan permitted Bell to stand while he handcuffed him. Thus, contrary to his assertion, Bell did not simply walk out, place his hands up, turn around, and tell law enforcement he had a knee injury and could not get down on the ground.

Viewing the evidence in a light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Bell willfully obstructed law enforcement officers performing their official duties. Thus, the State presented sufficient evidence for a jury to find Bell guilty of obstructing law enforcement.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Glasgow, J.

7