# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54158-1-II |
| Respondent, | |
| v. | |
| STEPHANIE ANN DUGGER, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Stephanie Dugger appeals her convictions of felony hit and run and assault in the second degree, arguing that the trial court erred when it declined to allow her mother, Melody Yamanaka, to testify about Dugger's history of panic attacks.

We hold that Dugger failed to preserve this claim of error for appellate review.

Accordingly, we affirm.

## FACTS

### I. FACTS LEADING TO DUGGER'S CONVICTION

When Dugger was driving her car on June 21, 2018, she abruptly stopped in reaction to the braking vehicles in front of her. Her sudden stop forced the motorcycle behind her, driven by James Twogood, to also stop suddenly. Afterward, Twogood and Dugger engaged in various forms of aggressive driving behavior, like passing each other, "brake check[ing]," and making hand gestures toward one another. 2 Verbatim Report of Proceedings (VRP) (Sept. 18, 2019) at 219.

When Dugger turned right onto Jackson Drive, the street on which she lived, Twogood followed her.

On Jackson Drive, Twogood once again passed Dugger on the right side of her car. While Twogood passed Dugger, a collision between Dugger's vehicle and Twogood's motorcycle occurred. Dugger heard a thump against her car and Twogood's motorcycle was on its left side when the police arrived at the scene. Dugger had already left when Twogood regained composure.

Dugger continued driving to her nearby residence. Once at home, Dugger asked a contractor who was present at her house to give her a ride to a friend's house. Dugger subsequently stayed at a hotel for almost a week.

Deputy Andrew Aman reported to the scene of the accident. Twogood's injuries at the scene included road rash on his forearm, a sprained thumb, and sore ribs. Twogood and his friend who was present at the scene, Joshua House, directed Deputy Aman to the house where Dugger's car was parked, two or three driveways down from the accident. Deputy Aman went to the address, knocked on the door, and rang the doorbell several times but was not able to make contact with anyone at the house. Deputy Aman returned to the address the following two days until he made contact with Dugger's mother, Melody Yamanaka, who also lived at the same residence.

Dugger later spoke to her mother and father about the deputy coming to the house. Almost a week after the incident, after Deputy Aman spoke with Dugger's mother, Dugger contacted an attorney and wrote a statement to the police about the event. Although Dugger has been diagnosed with and takes medication for panic attacks, Dugger did not include details about her panic attacks or how the attacks may have affected her reaction to the accident in her statement to the police.

The State subsequently charged Dugger with one count of felony hit and run and one count of assault in the second degree for hitting Twogood and fleeing the scene.

## II. TRIAL PROCEEDINGS

At trial, Dugger's defense proceeded on the theory that, because she was in a panicked state following the collision, Dugger did not realize a collision had occurred and thus did not knowingly flee the scene of the accident. Dugger described her version of events at trial: she thought Twogood had kicked her car when he tried to pass her on Jackson Drive. Similarly, Dugger did not think an accident occurred and did not see Twogood fall. Dugger also explained that, at the time of the accident and afterward, she was "freaked out," a victim of "road rage," and "so panicked [she] just didn't know anything except for [she] thought [she] was in fear of this person who was behind [her]." *Id.* at 339-40, 343.

Twogood presented an alternative version of events. He claimed that Dugger was waiting for him at the top of Jackson Drive, perpendicular to the road. Twogood testified that when he tried to go around Dugger, she hit him with her car. Twogood stated that Dugger's car was gone when he regained composure.

To discredit Dugger's version of events, the State referred to the statement Dugger provided to the police. Specifically, the State focused on why Dugger had not included information about her panic attack during the accident in her statement.

Dugger sought to call her mother, Yamanaka, as a witness to corroborate Dugger's history of panic attacks. The State challenged Yamanaka's proposed testimony. The State contended that its cross-examination of Dugger pertained to whether Dugger had a panic attack during the accident and did not question whether Dugger had a history of panic attacks. Therefore, the State

3

argued, Yamanaka's testimony was irrelevant because Yamanaka had no knowledge of Dugger's mental state on the day of the accident and because Dugger's history of panic attacks was not in question.

The trial court questioned whether Dugger adequately testified about having a panic attack during her direct examination. The trial court and Dugger discussed what qualified as testifying about a panic attack during the accident. The trial court ruled that Dugger must have explicitly testified about having a panic attack at the time of the incident for Yamanaka's testimony that "corroborate[s]" a history of panic attacks to be relevant and admissible. *Id.* at 404. Dugger's counsel referenced Dugger's testimony about being panicked and fearful but did not aver that Dugger specifically testified about having a panic attack during the accident. The trial court believed the portion of Dugger's testimony referring to being panicked during the accident was not the same as Dugger testifying that she experienced a panic attack and did not create a sufficient nexus to allow Yamanaka's testimony about Dugger's history of panic attacks.

Ultimately, the trial court ruled that, "[U]nless your client -- if your client is going to testify that she had a panic attack, then I would be inclined to allow Mom to come in and say, you know, my daughter suffers from panic attacks because it's corroboration." *Id.* The defendant's counsel then relayed a message sent to him from Dugger stating "[she] was not having a panic attack." *Id.* Based on Dugger's admission that she did not experience a panic attack during the incident, the trial court excluded any testimony by Yamanaka about Dugger's history of panic attacks, holding that such testimony would be irrelevant.

The jury found Dugger guilty of all charged offenses. The trial court sentenced Dugger to nine months confinement. Dugger Appeals.

DISCUSSION

Dugger argues the trial court abused its discretion when it excluded Yamanaka's testimony about Dugger's history and diagnosis of panic attacks. Dugger argues that the trial court's decision to exclude this testimony was based on its incorrect recollection of Dugger's testimony. Dugger contends that she did, in fact, testify that she experienced a panic attack during the incident. The argument Dugger made at the trial court—that she should not be required to testify that she was having a panic attack because her testimony about experiencing mere fear was sufficient to render Yamanaka's proposed testimony relevant—is not the same argument she now brings on appeal.

Dugger's objection at trial differs from the issue on appeal and, therefore, the issue was not adequately preserved. We decline to reach the merits of Dugger's claim because she failed to preserve her claim.

A. LEGAL PRINCIPLES

An objection must be properly preserved at trial to be reviewed on appeal. RAP 2.5(a). To be properly preserved, the issue raised at trial must be specific. *Mad River Orchard, Inc. v. Krack Corp.*, 89 Wn.2d 535, 537, 573 P.2d 796 (1978). Additionally, the appellant must argue the same, specific ground on appeal as was raised at the trial court. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985) ("Since the specific objection made at trial is not the basis the defendants are arguing before this court, they have lost their opportunity for review.").

Washington courts "adopt a strict approach because trial counsel's failure to object to the error robs the court of the opportunity to correct the error and avoid a retrial." *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). Similarly, an appellate court "will not reverse the trial court's decision to admit evidence where the trial court rejected the specific ground upon which the

defendant objected to the evidence and then, on appeal, the defendant argues for reversal based on an evidentiary rule not raised at trial." *Id.*

B. APPLICATION

At trial, Dugger sought to admit testimony from Yamanaka that Dugger had been diagnosed with and had a history of panic attacks. Dugger testified that she "panicked" and "freaked out" during the road rage incident with Twogood. 2 VRP (Sept. 18, 2019) at 340. Dugger also testified that following the incident, she took a dose of the medication she had been prescribed for her panic attacks. Dugger did not, however, testify that she had experienced a panic attack during the incident with Twogood. In fact, Dugger, through her attorney, later informed the trial court that she had *not* experienced a panic attack during the incident.

The trial court, in considering Dugger's request to have Yamanaka testify about her panic attack history and diagnosis, expressed its view that unless Dugger testified that she actually experienced a panic attack during the incident, Yamanaka's testimony on this point would not be relevant. In response, defense counsel first argued that it was enough for Dugger to have testified to a history of panic attacks, and that she should not have to testify that she had a panic attack during the incident because the jury could infer she was having a panic attack based on her conduct. The trial court responded that either Dugger or an expert would have to at least testify that the symptoms she experienced during the incident were symptoms of a panic attack because the jury could not make that connection in the absence of such testimony.

Defense counsel then argued that Dugger's testimony that she was in fear and that she was reacting to that fear was sufficient to demonstrate the relevance of Yamanaka's proposed testimony. The trial court ruled that Dugger would have to testify that she experienced a panic

attack, and that it was not enough for her to testify that she merely experienced fear. At this point, Dugger informed her counsel, who in turn informed the trial court, that she did not experience a panic attack. The trial court, as a result, excluded any testimony from Yamanaka about Dugger's history and diagnosis of panic attacks.

On appeal, Dugger argues that the trial court erred on a different basis than she argued at trial. On appeal, Dugger argues that she did, in fact, testify she experienced a panic attack and that the trial court did not remember her testimony accurately. Dugger implicitly contends that her testimony that she "panicked" and "freaked out" is the same as testifying she had a panic attack, and she thus satisfied the condition the trial court set out for admissibility of Yamanaka's testimony. 2 VRP (Sept. 18, 2019) at 340. Because the trial court's ruling was predicated on its inaccurate memory of her testimony, she contends, the ruling was an abuse of discretion.

What Dugger ignores, however, is that she did not argue to the trial court that it misremembered her testimony. Rather, defense counsel argued that Dugger's testimony about fear should have been sufficient to warrant admission of Yamanaka's testimony. If, in fact, the trial court misremembered Dugger's testimony, then defense counsel contributed to that error by confirming for the trial court that Dugger had not testified that she experienced a panic attack. Indeed, the crux of defense counsel's argument was that although Dugger only testified about experiencing fear, by having "panicked" and "freaked out," that such testimony should have been sufficient to admit Yamanaka's testimony. *Id.* Defense counsel did not argue to the trial court that it misremembered Dugger's testimony, as she now argues on appeal.

Moreover, Dugger herself confirmed for the trial court that she had not experienced a panic attack during the incident. In so doing, Dugger impliedly agreed with the trial court that

7

experiencing fear is *not* the equivalent of a panic attack because if it was, she would not have stated that she did not experience a panic attack.

Because Dugger's claim on appeal—that the trial court misremembered her testimony—is a different argument than the one she made to the trial court below, she has failed to preserve this issue for appeal. Dugger must bring the same issue to appeal as she preserved at trial court. *Guloy*, 104 Wn.2d at 422. Dugger asks us to find the trial court erred by basing its ruling on facts and argument *she proffered* to the court. Additionally, Dugger does not argue that we should consider her new argument on appeal under RAP 2.5(a). For these reasons, we conclude that Dugger failed to preserve this claim of error for appellate review.

CONCLUSION

Dugger's claim of error was not preserved and we decline to consider it. Further, even if Dugger did properly preserve the issue, the trial court did not abuse its discretion when it excluded Yamanaka's testimony about Dugger's history of panic attacks.

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 54158-1-II

CRUSER, J.

We concur:

WORSWICK, J.

LEE, C.J.

9