[Nos. 23129-8-II; 24433-1-II. Division Two. July 16, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. BRUCE G. KLINGER, *Appellant*.

*In the Matter of the Personal Restraint of* BRUCE G. KLINGER, *Petitioner.*

*R.A. Lewis* (of *Knapp O'Dell & Lewis*), for appellant/ petitioner (appointed counsel for appeal).

*Bradley W. Andersen, Prosecuting Attorney*, for respondent.

BRIDGEWATER, C.J. — In his direct appeal and personal restraint petition, Bruce G. Klinger challenges his conviction for felony possession of marijuana. We hold that Klinger's counsel was ineffective for not bringing a motion to suppress evidence found in the storage shed behind Klinger's cabin. We reverse the conviction.

On November 12, 1997, Skamania County sheriff's deputies went to Klinger's home to serve a district court warrant. When the deputies arrived at Klinger's cabin, they observed a truck in the driveway and smoke coming from the chimney, so they knocked on the door. When no one answered, Deputy Brett Robison went to the window and shined his flashlight into the interior. He saw Klinger inside smoking a hand-rolled cigarette and ordered him to come to the door. After a short while, Klinger opened the door. The deputies smelled marijuana smoke emanating from the cabin. They took Klinger into custody on the outstanding warrant.

The day after Klinger's arrest, Deputy Robison applied for a warrant to search Klinger's home, vehicle, and "outbuildings." The warrant was issued and in the subsequent search of the cabin deputies found marijuana pipes, "roach clips," marijuana growing literature, and approximately 154 grams of dried marijuana in the storage shed behind Klinger's cabin.

Klinger was convicted of possession of a controlled

substance. His appeal of the conviction has been consolidated with his personal restraint petition (PRP).

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

In his PRP, Klinger alleges that his trial counsel was ineffective for failing to bring a motion to suppress the marijuana found in the storage shed. Klinger brings this challenge in the form of a PRP because the record on appeal does not contain the warrant affidavit, which he alleges is insufficient to justify a search of the shed. Because this challenge was brought as a PRP, we may consider items not part of the superior court record to determine if Klinger's claim has merit. *See* RAP 9.10.

To demonstrate ineffective assistance of counsel in Washington, a defendant must satisfy the two-prong test laid out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *see also State v. Thomas*, 109 Wn.2d 222, 743 P.2d 816 (1987). First, a defendant must demonstrate that his attorney's representation fell below an objective standard of reasonableness. Second, a defendant must show that he or she was prejudiced by the deficient representation. Prejudice exists if "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995); *see also Strickland*, 466 U.S. at 695 ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.").[1] There is a strong presump-

---

[1]There is some question as to whether the test for prejudice enunciated in *McFarland* and *Strickland* has been modified by the U.S. Supreme Court. The recent case of *Strickler v. Greene*, 527 U.S. 263, 119 S. Ct. 1936, 1952, 144 L. Ed. 2d 286 (1999) stated the following rule:

[The defendant] must convince us that "there is a reasonable probability" that the result of the trial would have been different if the [error had not occurred]. As we stressed in *Kyles* [*v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)]: "[T]he adjective is important. *The question is not*

tion that a defendant received effective representation. *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995), *cert. denied*, 516 U.S. 1121 (1996); *Thomas*, 109 Wn.2d at 226. A defendant carries the burden of demonstrating that there was no legitimate· strategic or tactical rationale for the challenged attorney conduct. *McFarland*, 127 Wn.2d at 336.

## A. Deficient Representation

Our Supreme Court has held that the failure to bring a pretrial suppression motion is not per se deficient repre- · sentation and the defendant bears the burden of showing the absence of legitimate strategic or tactical reasons sup- ··porting the challenged conduct by counsel. *Id*. Klinger has asserted that there was no reasonable basis or strategic . reason for defense counsel's failure to bring this motion to suppress, and the State conceded at oral argument that there was none. We agree that the first prong of the *Strickland* test has been met.

## B. Prejudice

The State argues that although counsel was deficient, Klinger was not prejudiced because a motion to suppress would not have been successful if it had been brought. We must therefore review Klinger's claim that the affidavit . was insufficient in order to determine if a motion to suppress would have been granted.

■■■ A judge's determination that probable cause exists

---

*whether the defendant would more likely than not have received a different verdict [without the error], but whether [with the error] he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."*

(Emphasis added.) Although both *Strickler* and *Kyles* are discussing the standard for the materiality of exculpatory evidence wrongfully withheld from the defense by the prosecution, these cases may still impact the test for prejudice because *Strickland* held that the test for prejudice in ineffective assistance of counsel cases "finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution." *Strickland*, 466 U.S. at 694. But while we note this possible change in the law, we find that this change does not impact our result in this case. Under either the *Strickland* or the *Strickler* test, the error made by Klinger's counsel did result in prejudice.

to issue a search warrant deserves great deference on appeal and doubts should be resolved in favor of the warrant's validity. *State v. J-R Distribs., Inc.*, 111 Wn.2d 764, 774, 765 P.2d 281 (1988); *State v. Jackson*, 102 Wn.2d 432, 442, 688 P.2d 136 (1984). We are to interpret search warrants in a commonsense, practical way, not in a hypertechnical manner. *State v. Perrone*, 119 Wn.2d 538, 549-51, 834 P.2d 611 (1992). A judge's finding that probable cause exists is reviewed under an abuse of discretion standard. *State v. Remboldt*, 64 Wn. App. 505, 509, 827 P.2d 282, *review denied*, 119 Wn.2d 1005 (1992).

The reviewing court examines the information available to the issuing judge when determining whether there was probable cause for issuance of the warrant. *State v. Murray*, 110 Wn.2d 706, 709-10, 757 P.2d 487 (1988). Probable cause is established if the affidavit in support of the warrant sets forth facts sufficient for a reasonable person to conclude that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched. *Perrone*, 119 Wn.2d at 551; *State v. Maxwell*, 114 Wn.2d 761, 769, 791 P.2d 223 (1990); *State v. Garcia*, 63 Wn. App. 868, 871, 824 P.2d 1220 (1992). The affidavit in support of the search warrant must adequately show circumstances that extend beyond suspicion and mere personal belief that evidence of a crime will be found on the premises to be searched. *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981); *State v. Rangitsch*, 40 Wn. App. 771, 780, 700 P.2d 382 (1985). "This is not to suggest, however, that the information linking the things to be seized with criminal activity must always be of the direct sort or that reasonable inferences cannot be drawn from the surrounding circumstances." *Garcia*, 63 Wn. App. at 873 (citing 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 3.7(d), at 102 (2d ed. 1987)).

The issue here is whether the affidavit in support of the warrant provided facts sufficient to convince a reasonable judge that evidence of a crime would be found in the shed. The affidavit offered in support of the warrant al-

leged that the police had observed Klinger smoking a hand-rolled cigarette in his cabin, smelled marijuana smoke coming from the cabin, and observed Klinger in what appeared to be an intoxicated state. It also offered Klinger's arrest record, of which one arrest was for simple possession of marijuana. The deputy offered no other facts to support a search of the cabin and the storage shed other than to say that he "found it common for persons involved in the distribution of controlled substances to secrete controlled substances within their residences, in vehicles, and in outbuildings." The affidavit provides no facts about the shed, who owns it, how close it is to the cabin, or even that the shed exists at all. While the affidavit clearly provides probable cause to search the cabin, there is no specific evidence linking the storage shed in particular to any evidence of a crime.

The State argues that officer testimony about where marijuana is usually found was sufficient to establish the nexus between the evidence and the shed.

> "[T]hat nexus may be established either through direct observation or through normal inferences as to where the articles sought would be located." For that reason, a "warrant may be upheld when the nexus between the items to be seized and the place to be searched rests not upon direct observation, but on the type of crime, nature of the items, and normal inferences [about] where a criminal would likely hide contraband."
>
> . . . But the general observations must be based on some specific facts which support an inference that the particular individual is involved in drug dealing and evidence of that activity is likely to be found at the place to be searched.

*State v. Thein*, 91 Wn. App. 476, 485, 957 P.2d 1261 (1998) (footnotes omitted), *review granted*, 137 Wn.2d 1001 (1999); *see also State v. Gross*, 57 Wn. App. 549, 554, 789 P.2d 317, *review denied*, 115 Wn.2d 1014 (1990). The evidence in this affidavit was that Klinger was in possession of marijuana in his cabin. There is no evidence that he was involved in the distribution or manufacture of controlled substances.

In fact, the State concedes that this was never a drug trafficking case.[2] Thus, these statements about the common behavior of drug traffickers do not establish the required nexus.

 Conspicuously missing from the affidavit are any statements by the deputy that it is common for persons who merely possess marijuana to secrete it throughout their premises. At oral argument, the State urged the court to edit the affidavit so that it would leave only the statements that will support the warrant. The only possible reference to persons in possession is on page four of the affidavit, where the deputy states:

> I have found that it is common for persons involved in the *use and sale* of controlled substances to secrete controlled substances and records, concerning the sale and distribution of the substances in and about their residences and property, to include unattached buildings and vehicles, and to actually bury their substances and/or proceeds on the property of their residences, for the purpose of foregoing discovery by law enforcement, and/or persons that might intend to steal their substances.

(Emphasis added.) But even this reference is focused on the distribution of drugs, rather than mere possession. The State wants us to "redact" the portions of this paragraph that relate to drug dealing so that it reads as follows:

> I have found that it is common for persons involved in the use ~~and sale~~ of controlled substances to secrete controlled substances ~~and records, concerning the sale and distribution of the substances~~ in and about their residences and property, to include unattached buildings and vehicles, and to actually bury their substances ~~and/or proceeds~~ on the property of their residences, for the purpose of foregoing discovery by law enforcement, and/or persons that might intend to steal their substances.

But we are not in the business of rewriting affidavits. In

---

[2]The prosecutor conceded at oral argument that there was no evidence of trafficking because Klinger lived modestly in an isolated cabin without electricity with no trappings of wealth.

order to read the affidavit as the State suggests, we must find some reason to believe that this meaning was intended. We do not. The first sentence says "use and sale," not use *or* sale, and not just use. And the context indicates that the deputy was talking about the sale of drugs, not mere possession; the paragraph addresses looking for "records of sale or distribution" and "the proceeds of drug sales." Furthermore, if the deputy had meant mere possession, we would expect to see this reflected in the paragraphs following this one—we do not. Every other paragraph is directed only at drug sale, manufacturing, or distribution.[3] Therefore, we decline to rearrange the words in this affidavit to make them say something that was clearly not intended.

The State also argues that it need not show allegations that evidence would be found in the shed specifically because once they have shown probable cause to search the house, they are entitled to search the entire premises. In support of its argument, the State cites two cases dealing with marijuana grow operations. *See State v. Helmka*, 86 Wn.2d 91, 542 P.2d 115 (1975) (growing marijuana plant seen through an apartment window justified search of entire premises); *State v. Christiansen*, 40 Wn. App. 249, 252-53, 698 P.2d 1059 (1985) (aerial sighting of marijuana

---

[3]The affidavit in this case is a tribute to modern personal computers. It begins by listing all of the items that the deputy has "good and sufficient reason to believe" are on the premises: There is a page of lists that has six headings, including "items used to facilitate the manufacturing, and/or distribution and/or packaging of marijuana," to "[r]ecords relating to the transportation, ordering, manufacturing, possession, sale, transfer and importation of controlled substances . . . ." It refers to books, invoices, records of real estate transactions, utility bills, money wrappers, photographs of co-conspirators, none of which applies in this case. The affidavit contains two pages of paragraphs concerning what he has found common for persons who deal in and distribute illicit drugs to do within their residence. These include: to divide controlled substances into smaller quantities, to secrete it in outbuildings, to keep records of their crop growing, to disguise their assets, to have records of avoiding C.T.R. requirements, to have assets taken in trade, to maintain cryptic records of drugs they have given on assignment, to use computers, and to have weapons. The prosecutor plainly admitted that the bulk of the affidavit did not pertain to Mr. Klinger because this was not a distribution case. We do not favor this type of affidavit because it imparts no information or legitimate inferences from the possession of marijuana. Affidavits supporting search warrants should be particular about the crime involved. This affidavit proves that the computer must not be used in place of common sense.

growing on the property was sufficient to justify search of entire "premises," including the house on the property). Those cases that have validated a search warrant for the entire premises without particularized suspicion for each building are drug manufacturing (or marijuana growing) and drug trafficking cases. The scope of a search for evidence of a drug distribution operation is vastly different from a mere possession case. The court in *Gross*, 57 Wn. App. at 553, espoused this view, stating that searches in drug trafficking cases may be broader because:

> (1) drug trafficking is a much greater evil than drug use, increasing the governmental justification to search, and (2) if the homes of drug users could be searched as readily as the homes of drug traffickers, a much greater invasion of privacy would result.

Granting a greater scope for searches in drug trafficking cases is justified by the general premise of warrant review, which holds that:

> [A] warrant may be upheld when the nexus between the items to be seized and the place to be searched rests not upon direct observations, but on the type of crime, nature of the items, and normal inferences where a criminal would likely hide contraband.

*Gross*, 57 Wn. App. at 554 (citing *United States v. Dubrofsky*, 581 F.2d 208, 213 (9th Cir. 1978)). But even assuming that the home of a drug trafficker is to be accorded less privacy than a drug user, this case clearly involves a drug user. The affidavit contained no facts upon which the issuing judge could conclude that Klinger was a drug trafficker and the State conceded in oral argument that Klinger was and is not a drug trafficker.

When we apply the nexus requirement to a drug possession case, where there is no evidence of drug trafficking, the scope of the search does not reasonably extend to the entire premises merely by reference to the type of crime. There must be some facts to connect outbuildings or the rest of the property to the crime. *See State v. Dalton*, 73

Wn. App. 132, 139-40, 868 P.2d 873 (1994). There are no such facts in this case. Therefore, the affidavit must fail and the drugs found in the shed should have been suppressed.

Because there is at least a reasonable probability that a motion to suppress would have been granted, defense counsel's error did prejudice Klinger. Thus, defense counsel's failure to bring the motion to suppress satisfies both prongs of the *Strickland* test and constitutes ineffective assistance of counsel.

## II. APPEAL ISSUES

We need not address the arguments Klinger raised in his direct appeal, including insufficient evidence of constructive possession, prosecutorial misconduct, and the improper admission of evidence, because of our result on the ineffective assistance counsel issue. Furthermore, because the only evidence was the marijuana found in the shed, a new trial is unlikely.

Klinger's PRP is granted and the conviction is reversed.

ARMSTRONG and HUNT, JJ., concur.