996 P.2d 658 (2000)
100 Wash.App. 259
In the Matter of the Application for Relief From Personal Restraint of: Patrick Vernon McCREADY, Petitioner.
No. 17989-3-III.
Court of Appeals of Washington, Division 3.
April 11, 2000.
Nicholas W. Marchi, Carney & Marchi, Seattle, for Appellant.
Steven M. Lowe, Paige L. Sully, Prosecuting Attorney's Office, Pasco, for Respondent.
KURTZ, C.J.
Patrick Vernon McCready seeks relief from personal restraint imposed following his jury conviction for first degree assault. The jury found that he was armed with a firearm at the time he committed the offense. In this timely filed petition, Mr. McCready contends he received ineffective assistance of counsel. Specifically, the State had offered Mr. McCready a plea bargain, under which it agreed to reduce the charge to second degree assault if he pleaded guilty. He asserts that he rejected the State's offer without his counsel informing him that the mandatory five-year firearm enhancement under RCW 9.94A.310 would run consecutive to the sentence for first degree assault, if he were convicted as originally charged.
This court remanded Mr. McCready's petition to the superior court for a reference hearing and entry of findings on the issue of whether counsel informed him that the five-year weapon enhancement ran consecutive to the sentence for the underlying crime of first degree assault. The superior court conducted the hearing and entered the following findings:
1. Larry Stephenson was the attorney of record for the Defendant during the time he was charged with Assault in the First Degree while armed with a firearm.
2. Mr. Stephenson met with the Defendant and his mother on several occasions and advised him of the State's offer to reduce the pending charge to that of Assault in the Second Degree. The standard range on that charge would be 6 to 12 months along with a 36 month firearm *659 enhancement. Both the Defendant and his mother were advised that the enhancement would be added to the standard range.
3. Mr. Stephenson advised the Defendant by letter dated July, 1996, that the State would proceed to trial as charged and recommend the standard range and mandatory enhancement which he determined to be 162 to 196 months. While Mr. Stephenson may not have used the term "consecutive" to describe the firearm enhancement, it was made clear that the enhancement would be added to the standard range sentence.

4. Prior to trial, Mr. Stephenson discussed with the Defendant the potential for an exceptional sentence below the standard range. He also advised the Defendant of the difficulty in obtaining an exceptional sentence.
5. Mr. Stephenson did not discuss with the Defendant, either prior to trial or sentencing, that the minimum sentence to be imposed in this case would be 10 years based on the 5 year mandatory minimum sentence on a Class A felony and the mandatory 5 year firearm enhancement.

6. After the Defendant's conviction on Assault in the First Degree with the firearm enhancement, Mr. Stephenson requested the court impose an exceptional sentence downward, which the trial court determined to do. Mr. Stephenson argued to the trial court that the minimum mandatory sentence and the firearm enhancement need not be served consecutively.
7. The trial court concluded that the firearm enhancement must be served consecutively to the mandatory 5 year minimum sentence to be imposed on the Assault charge, and so imposed an exceptional sentence of 10 years.
(Emphasis added.)
In summary, the court on the reference hearing found that counsel advised Mr. McCready that the firearm enhancement would be added to the standard range sentence, and, if convicted, his standard range sentence would be 162 to 196 months. That number of months is the total for the mandatory, five-year enhancement plus his standard range sentence for first degree assault. The record at the reference hearing supports these findings.
But, the superior court also found that counsel did not advise Mr. McCready that his absolute, minimum sentence would be 120 months. The mandatory minimum sentence for first degree assault "where the offender used force or means likely to result in death," is five years. RCW 9.94A.120(4). When that time is added to the mandatory five-year firearm enhancement, the resulting minimum sentence is 10 years.
To prevail on his claim of ineffective assistance of counsel, Mr. McCready must show both deficient performance on the part of his attorney, and resulting prejudice. State v. Klinger, 96 Wash.App. 619, 622, 980 P.2d 282 (1999). He asserts his lawyer was deficient in not advising him that he would receive an absolute minimum sentence of 10 years, if convicted. He also claims he would have accepted the State's offer of second degree assault plus a 36-month mandatory firearm enhancement, if he had known about that minimum.
With respect to the performance prong, as applied to Mr. McCready's petition, his counsel was under an ethical obligation to discuss plea negotiations with him. See State v. James, 48 Wash.App. 353, 362, 739 P.2d 1161 (1987). And, he had to provide him with sufficient information to make an informed decision on whether or not to plead guilty. State v. Holm, 91 Wash.App. 429, 435, 957 P.2d 1278 (1998), review denied, 137 Wash.2d 1011, 978 P.2d 1098 (1999). Because counsel did not inform Mr. McCready of the maximum and minimum sentences that could be imposed for the offenses charged by the State, he did not make an informed decision regarding the plea offer. See People v. Blommaert, 237 Ill.App.3d 811, 817-18, 604 N.E.2d 1054, 178 Ill.Dec. 531 (1992). Counsel testified at the reference hearing that he did not discuss with Mr. McCready the fact the charges subjected him to two, consecutive, five-year, mandatory minimum sentences. The first he learned of this fact was when the sentencing court raised it at the sentencing hearing. This failure to advise Mr. McCready of the available options and *660 possible consequences constitutes ineffective assistance of counsel. See Beckham v. Wainwright, 639 F.2d 262, 267 (5th Cir.1981). Stated differently, Mr. McCready's rejection of the plea offer was not voluntary because he did not understand the terms of the proffered plea bargain and the consequences of rejecting it.
However, the State argues that Mr. McCready has not shown this deficiency prejudiced him. It cites the superior court's findings on remand that counsel clearly advised Mr. McCready of the difficulty in obtaining an exceptional sentence downward. And, it argues that Mr. McCready would not have accepted the State's offer had he known of the 10-year minimum, since he did not accept the offer knowing his sentence could be even greater, i.e., 162 to 196 months.
It is true that Mr. McCready knew that for first degree assault, his standard range sentence with his offender score was more than five years. But, he had reason to believe that a jury might find he acted in self-defense and acquit him of the charge, or that the court might sentence him to a below range sentence of possibly less than five years, based on mitigating circumstances, even if he were convicted. This court's statement of the facts in the opinion deciding his direct appeal reflects the situation out of which the charge against Mr. McCready arose, and the mitigating circumstances that were present, as follows:
Mr. McCready and two friends, Felix Sanchez and Jorge Garcia, were visiting and drinking in Thomas Stepp's trailer in Pasco early one morning in February 1995.[[1]] Mr. Stepp's roommates, Anthony Guy and Willie Groce, returned home. An argument and fight broke out between Mr. McCready, Mr. Guy, and Mr. Groce. Mr. McCready was severely beaten. Although threats were made to shoot him, Mr. McCready did not see any gun. Mr. Stepp displayed his handgun attempting to quiet the situation. Then, Mr. McCready, Mr. Stepp, Mr. Sanchez and Mr. Garcia left to get into Mr. McCready's car parked a few feet from the front door of the trailer. Mr. Stepp trailed and argued with his roommates before getting into the car. Mr. McCready testified that he then heard everybody yelling, "He has a gun, he has a gun." Mr. McCready ducked behind his car door, reached for Mr. Stepp's gun that had been placed next to his seat and fired it at least five times toward the trailer. As Mr. McCready rapidly drove away, he heard a shotgun blast coming from the direction of the trailer. Mr. Groce testified he ran for the shotgun and fired it into the air after the shots were fired.
Mr. Guy was struck by one of the bullets. After Mr. McCready turned himself in, he was charged with first degree assault. During his trial, Mr. McCready's mother testified that her son had attention deficit disorder (ADD), which made him extremely impulsive when he did not take his medication. No expert was called to discuss Mr. McCready's alleged condition. Defense counsel elected self-defense rather than diminished capacity as the defense strategy.
The jury found him guilty of first degree assault with a special finding  armed with a firearm. Mr. McCready's prior criminal history included one prior non-violent offense for rioting. Mr. McCready's standard sentencing range, including the (60-month) firearm enhancement, was 153 to 183 months. The judge found three mitigating factors in RCW 9.94A.390 present. First, Mr. Guy was a participant and a provoker of the shooting. Second, Mr. McCready had no apparent predisposition to shoot and was induced by others to participate in the crime. Third, his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the law was significantly impaired. The judge imposed a mitigated sentence of 120 months, including the 60-month enhancement to run consecutively to the underlying sentence.
State v. McCready, 95 Wash.App. 1017, 1999 WL 236292, at *1 (Wash.App. Div. III).
*661 Nevertheless, if Mr. McCready had realized that the absolute minimum sentence he would receive for first degree assault was five years, which, with the enhancement, would result in a 10-year mandatory sentence, he may have made a different choice. He may have decided not to take the chance on acquittal by reason of self-defense or on an exceptional sentence and, instead, opted for the plea bargain.
We therefore grant Mr. McCready's petition and remand his case to superior court for retrial.
SWEENEY, J., concurs.
BROWN, J. (dissenting).
If Mr. McCready was here asking us to review a trial court decision denying withdrawal of his plea because his attorney failed to advise him of sentencing consequences, then under the standards applicable to plea withdrawal, he would present a reasonable complaint. However, because Mr. McCready is seeking relief under a personal restraint petition after rejecting a plea offer and electing a trial strategy, we must review for ineffective assistance of counsel in that context. I believe he does not show deficient attorney performance or prejudice. Accordingly, I respectfully dissent.
We focus on deficient attorney performance and, if any, the resulting prejudice. State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996). We presume adequate representation. Id. Deficient performance is not shown by failed trial strategy. Id. We ask whether any deficiency shown deprived the defendant of a fair trial in the sense that the result would have been different. Id. at 78, 917 P.2d 563. In our context, the standard is whether a reasonable probability exists that but for his attorney's alleged deficiency, Mr. McCready would have accepted the plea. State v. James, 48 Wash.App. 353, 363-64, 739 P.2d 1161 (1987). In this personal restraint petition, we are asked to consider Mr. McCready's claim that material facts existed outside the record, which in the interest of justice, require his conviction and sentence to be vacated. RAP 16.4(c)(3).
This is not a case where trial counsel failed to convey the State's plea offer. James, 48 Wash.App. at 361-62, 739 P.2d 1161. A reference hearing flushed out the facts. According to the trial court's second finding, the plea offer was accurately conveyed to Mr. McCready. It follows that trial counsel's performance was, to this extent, not deficient. Under the trial court's third finding, Mr. McCready clearly understood that at least one mandatory five-year enhancement would be added to his standard range if convicted as charged and that he was subject to a 162 to 196 months standard range.
Mr. McCready's strategy was first, to seek acquittal under a self-defense theory, and second, if unsuccessful, to seek a mitigated sentence for first degree assault. Significantly, Mr. McCready expected no less than five years if convicted. Logically, additional penalties were secondary to Mr. McCready's decision to seek an acquittal because he gave up a plea offer that would have reduced his sentencing risk below five years. It follows that risk reduction was not material in Mr. McCready's trial strategy above five years.
Mr. McCready rejected a plea offer that would have fixed his sentencing risks by cutting the firearm enhancement from five to three years and reducing the underlying standard range from 6 to 12 months. The resulting maximum 48-month standard range sentence is well below the original standard range sentence and the incorrectly understood mandatory minimum of five years. Thus, using a risk reduction analysis the plea offer was below any sentence understood by Mr. McCready, as likely to be imposed under the original charge.
Mr. McCready rejected a risk fixed at 48 months. Mr. McCready could not reduce his sentencing risk below five years unless he accepted the plea bargain. Thus, it was immaterial whether one or two five-year enhancements were included in the higher standard range because the practical effect did not change. Instead, Mr. McCready chose a strategy to defend in hopes of an acquittal, then seek an exceptional sentence if convicted. Strategy decisions do not amount to deficient performance. Mr. McCready simply *662 left 48 months on the table in favor of getting a defense verdict.
Moreover, any mitigated sentence was purely speculative because it necessarily involved trial court discretion. Whether the sentencing enhancements were to be consecutive, concurrent or subject to exceptional sentencing at all were issues not until recently decided. See In re Post Sentencing Review of Charles, 135 Wash.2d 239, 955 P.2d 798 (1998) (concurrent or consecutive sentencing rules for firearm enhancements established); State v. Brown, 139 Wash.2d 20, 983 P.2d 608 (1999) (sentencing court lacks authority to grant exceptional sentence below mandatory weapon enhancement). Trial counsel for Mr. McCready would have been quite prescient to anticipate the line of cases beginning with Charles. I would not find deficient performance here, especially in light of Brown. All considered, I cannot say (1) the interests of justice require vacation of Mr. McCready's conviction and sentence or (2) a reasonable probability existed that Mr. McCready would have accepted the plea but for the alleged deficiency.
Mr. McCready cannot show the necessary prejudice. Granting an exceptional sentence is a matter of discretion, not a right. RCW 9.94A.120(2). Thus, in the context of plea-bargaining, banking on an exceptional sentence is pure speculation. Certainly, no one could predict or guarantee any particular determinate sentence would result from an exceptional sentence request. The trial court's Finding of Fact No. 4 bears this out. In sum, Mr. McCready merely invites us to speculate about why he rejected the plea offer. This is too tenuous a basis for us to decide prejudice resulted from the deficiency alleged. The type of prejudice suffered by Mr. McCready is not unfair. He was prejudiced merely in the sense that he was incarcerated for longer than 48 months. This is a "buyer's remorse" approach that we should reject.
NOTES
[1] The date in the opinion is wrong. As reflected in Mr. McCready's judgment and sentence, and in the record of his trial, he committed the assault in February 1996. The date is significant because the sentencing laws discussed in this order did not go into effect until July 1995.