IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30089-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NIBARDO ANDRADE MENDOZA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Nibardo Andrade Mendoza was convicted of manufacture of a controlled substance and possession of a controlled substance after a large marijuana grow operation was discovered at a greenhouse that he owned but had rented out for several years. The State's theory was that he was an accomplice to the operation. Its principal evidence against him was obtained in a search of his home and his brother's home, which Mr. Andrade[1] used as a business address.

He makes several assignments of error on appeal, but we find one dispositive: Mr. Andrade received ineffective assistance of counsel when his lawyer failed to challenge

_____

[1] The defendant is referred to as Mr. Andrade throughout the record, which appears to be his preference.

probable cause for the search of his home and business address. We reverse the judgment and sentence and remand for a new trial.

FACTS AND PROCEDURAL BACKGROUND

On July 18, 2010, firemen fighting a large wildfire in Yakima County were sent to Carvo Road to assess which homes and other structures located in the path of the fire could be saved and should be the first to be protected. One of the firemen circled a greenhouse at 231 Carvo Road whose windows were covered internally, in an effort to see what, if anything, was inside. Through slits in the window coverings he saw a large number of marijuana plants. The information was passed up the chain of command and on to the Yakima County Sheriff's Department. Sheriff's detectives determined from county records that Nibardo Andrade and his wife, Martha, were the property owners.

By the time four Yakima County deputies arrived at the Carvo Road address, it was dark. Upon detecting the strong smell of marijuana and concluding it was a large grow operation, the officers, concerned for their safety, decided to enter the buildings and secure them rather than wait the 45 minutes to an hour it would take to get a search warrant. Both the shop and the greenhouse were locked, so they rammed the doors, entered, and made sure that no one was present in either building. Detective Robert Tucker then prepared the paperwork to secure a telephonic search warrant for the greenhouse and an adjacent shop.

A search warrant was obtained and search of the greenhouse produced many large marijuana plants having an estimated value, in total, of three and a half million dollars. Detectives estimated that the grow operation had been ongoing for at least two to three years.

The shop appeared to have been recently occupied as living quarters. Unspoiled food was found in a kitchen area and male clothing was found in the bathroom. Evidence located in the search of the shop included an envelope with a phone number on it, a retail receipt, a March 2007 *High Times* magazine,[2] and a Grower's Supply catalog addressed to "Nibardo Andrade or Current Occupant, Flora Care, 231 Carvo Road, Yakima." Report of Proceedings (RP) at 204. Deputies also found other dominion papers, which one detective explained was "anything that will have—that's been mailed to you that shows at least you're receiving mail at that location, or possibly control over that property." RP at 244. The other dominion papers were associated with a woman and three men other than Mr. Andrade and included a power bill addressed to Julio Cesar Torres and a bus ticket for a Mr. Areano.

A few days later, Detective Tucker applied for a search warrant for two other Yakima properties—908 North 9th Avenue and 2603 West King Court—that he had determined to be addresses, respectively, for a landscaping business conducted by Mr.

---

[2] *High Times* describes itself as featuring content about marijuana and other currently illegal substances, as well as hemp and other cannabis-related subject matter.

Andrade (Flora Care Nursery) and for Mr. Andrade's home. Detective Tucker's affidavit included a four-and-a-half-page single-spaced recount of the basis for probable cause but most was a detailed narrative of the earlier search of the Carvo Road greenhouse and shop. The affidavit reported that during the Carvo Road search, officers located unidentified dominion papers in the bedroom of the shop that belonged to Mr. Andrade and had found tax information addressed to Mr. Andrade in the living room. It acknowledged that dominion papers had also been found for Victor Javier Arrelano and Julio Cesar Torres and that the only address on any of the documents, including those associated with Mr. Andrade, was 231 Carvo Road.

The detective's only statements in the affidavit supporting a nexus between the grow operation and Mr. Andrade's business and home addresses consisted of the following:

For the business address, 908 North 9th Avenue:

Jesus Andrade (later determined to be Mr. Andrade's brother)[3] is listed as owner of this property.

This is a prior address for Mr. Andrade.

Detectives were told by several neighbors at the Carvo Road address that Mr. Andrade operates a landscaping business. They determined that he holds a business license for a landscaping business called Flora Care Nursery, which is shown as operating out of this residence address.

---

[3] All of our references to "Mr. Andrade" are to the defendant, Nibardo Andrade. For clarity, we will use the first names of Jesus Andrade and his son, Jesus Andrade Jr., in referring to them.

4

Police saw a small blue barrel in the backyard, similar to a blue barrel observed at the greenhouse property.

Police did not see any cars belonging to Mr. Andrade at this address, although a car located there appeared to match a vehicle seen in pictures posted on the Auditor's Office site of the driveway at the 2603 West King Court address.

Clerk's Papers (CP) at 66-67.

For Mr. Andrade's home address, 2603 West King Court:

The Auditor's Office showed that Mr. Andrade owned this property and that it may be in foreclosure although he still resided there.

He was listed as the grantor of a deed of trust on this property.

Police received information that he was paying the utility bills for this address.

Department of Licensing showed this as his residence address and that he had several vehicles registered at this address.

Police saw a car in the driveway that was registered to Mr. Andrade at this address.

*Id.*

Additional information included in the affidavit but not tied to either address included the results of a criminal history check on Mr. Andrade, revealing two felony convictions for drug-related crimes 22 years earlier (1988) in Okanogan County; that John Ferry, a neighbor on Carvo Road, saw Mr. Andrade tending to a waterline at the Carvo Road property approximately a week before the July 18 fire but could not confirm that Mr. Andrade had entered either building; that Mr. Ferry and another Carvo Road neighbor had seen two other Hispanic males at the 231 Carvo Road property; and that

5

another unidentified Carvo Road neighbor had seen the marijuana plants at the 231 Carvo

Road property during a windstorm when a piece of the plastic roof blew off.

Detective Tucker concluded his statement of probable cause with the observation

that

> [affiant] believes that drug trafficking/manufacturing is a continuous pattern of illegal acts and not just an isolated event. [Affiant] believes that ANDRADE is in possession of additional quantities of marijuana and drug paraphernalia for packaging, cutting, weighing, harvesting/growing equipment. [Affiant] additionally believes that ANDRADE will be in possession of documentation indicating dominion and control of the residence at 2603 West King Court in Yakima and 231 Carvo Road in Yakima along with documents related to the distribution/manufacturing of controlled substances such as crib notes, phone numbers, addresses and names of associates in the drug trafficking organization, which can be stored inside of cellular telephones.

*Id.* at 68.

A search warrant for the two properties was obtained and executed. Mr. Andrade

was arrested and brought to his home in handcuffs as police were serving the search

warrant. When Mr. Andrade asked why he was being arrested, the police said it was

because marijuana had been found on his property. He remarked he had suspected within

the last few months that there might have been a marijuana grow operation going on.

Inside Mr. Andrade's home, officers found a number of horticulture books and a

2009 issue of *High Times*. Mr. Andrade told officers he acquired the magazine for

growing tips for the other plants he grew. Officers also found receipts from Lowe's for

bags of Organic Choice gardening soil, and keys, two of which opened a door to the

6

Carvo Road shop. In file cabinets police found a 2007 lease agreement for the Carvo

Road property to Carlos Martinez, a 2008 lease agreement to Endoc Mendoza, a 2009

lease agreement to Ruben Sosa, and a 2010 lease agreement to Luis Algonoso Areano-

Areano. Photocopies of the lessees' identification cards were attached to the lease

copies. Detectives would later testify that they had tried to locate the several lessees

without success.

Officers also found some scribbled notes in Spanish that said "Ranch Lease for

2010" on the top of the page. RP at 353. The notes were of monthly payment amounts

that varied over the year and made reference to a bonus of $1,000 for each 10 pounds of

production. They included other rental obligations and conditions for a lessor and lessee.

Outside the home, police found a number of empty plant pots and a large roll of

tarp that appeared to be a new greenhouse cover.

Before trial, Mr. Andrade moved to suppress all of the State's evidence traceable

to the initial search of the Carvo Road property. He relied on the fact that officers had

entered the greenhouse before obtaining a search warrant and argued that no exception to

the warrant requirement applied. In a supplemental motion, he argued that Detective

Tucker's affidavit in support of the search warrant for the Ninth Avenue and King Court

properties contained material omissions and misrepresentations that, when stricken,

would invalidate the warrant. He did not otherwise challenge the search of the Ninth

Avenue and King Court properties. The trial court denied the suppression motions.

At trial, the State presented what it agreed was an overwhelmingly circumstantial case supporting Mr. Andrade's liability as an accomplice in the grow operation. In resisting a motion to dismiss at the end of its case, it summarized its evidence as including proof that Mr. Andrade owned the property; that he had leased the greenhouse for the three years the evidence suggested it was used for the grow operation; that his testimony about his lease arrangements, rent collection, and possession at his home of a *High Times* magazine was confused and not credible; and that the search of his home produced evidence that he had purchased the same potting soil as was being used in the grow operation.

The State had also presented evidence impeaching the testimony of Mr. Andrade's nephew, Jesus Andrade Jr. The State first called Jesus Jr. and asked if he had admitted knowing anything about marijuana being grown at the greenhouse, which he denied. It then called Detective Robert Hubbard, who testified that he had spoken to the then 18-year-old nephew during the search of the boy's father's Ninth Avenue property. The detective testified that Jesus Jr. told him his uncle purchased the greenhouse several years earlier and initially operated a nursery there, but that the last time Jesus Jr. had been to the greenhouse—in 2008—his uncle told him that he was renting it to men who were growing marijuana and that he should stay away.

Mr. Andrade presented evidence that he and his wife bought the Carvo Road property in 2005 with the intention of operating Flora Care Nursery to sell flowers and

8

grow products for his landscaping business. Their initial plan had been to operate it together. The situation with his wife changed, he was left to operate it alone, and he was unable to operate successfully given the demands of his landscaping business. At the time of his arrest, Mr. Andrade was working as a landscaper and as a social worker at Memorial Hospital. Mr. Andrade testified that after briefly living at the property, he moved back to the city and beginning in late 2007 rented out the property to others. He testified that monthly rent for the Carvo Road property was paid by the tenants in cash.

The jury found Mr. Andrade guilty as charged. It made a finding by special verdict that the crime was a major violation of the Uniform Controlled Substances Act, chapter 69.50 RCW. The court imposed an exceptional sentence of 36 months on count one based on the special verdict finding, and a concurrent high-end standard range sentence of 6 months on count two. Mr. Andrade appeals.

## ANALYSIS

Mr. Andrade raises several issues on appeal, two of which the State concedes. We find his claim of ineffective assistance of counsel to be dispositive. Mr. Andrade argues that there was no tactical reason for his trial lawyer not to move to suppress the fruits of the search of the Ninth Avenue business address and his home for lack of probable cause, that the failure to move to suppress that evidence was ineffective assistance, and that he was prejudiced by the failure. We agree.

The Sixth Amendment guarantees the right to counsel. An attorney must perform to the standards of the profession; failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). To demonstrate ineffective assistance of counsel, a defendant must show that his lawyer's representation was deficient and the deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). An attorney's representation is deficient when his performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). Prejudice occurs when, but for the deficient performance, there is a reasonable probability that the outcome would have been different. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). A claim for ineffective assistance presents a mixed question of law and fact, which appellate courts review de novo. *State v. Cross*, 156 Wn.2d 580, 605, 132 P.3d 80 (2006); *State v. Cham*, 165 Wn. App. 438, 445, 267 P.3d 528 (2011), *modified on remand*, noted at 172 Wn. App. 1002 (2012).

"Judicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered

10

sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)).

Mr. Andrade argues persuasively that there was no legitimate tactical reason for not moving to suppress the evidence obtained in the search of the Ninth Avenue and King Court homes. There was no evidence he was a principal in the marijuana grow operation; the State's evidence established at best that he was an accomplice. Its case was circumstantial and substantially depended on evidence seized in the second search. Some of the evidence seized was arguably helpful to Mr. Andrade, so if he had not testified one might presume that his lawyer elected to allow the evidence to come in so he could rely on any that helped. Mr. Andrade did testify, however, so he was in a position to present whatever evidence was helpful, subject to legitimate impeachment.

The only strategy the State suggests for the trial lawyer's failure to challenge probable cause is that success with the suppression motion that he *did* make—to suppress evidence from the search of Carvo Road—would invalidate all of the search warrants. While true, that does not explain why a reasonable lawyer would forgo a motion that could result in suppression of most of the State's evidence, even if not all of it.

Although we presume the effectiveness of counsel, the presumption fails if there is no legitimate tactical explanation for his or her actions. *State v. Aho*, 137 Wn.2d 736, 745-46, 975 P.2d 512 (1999). Here, the State's circumstantial case would have been materially weakened without the fruits of the second search, yet Mr. Andrade's lawyer

11

did not challenge probable cause for the warrant despite a serious question whether there was a sufficient nexus between the information in the possession of police on July 23 and Mr. Andrade's home or business address. Counsel's conduct was therefore deficient. *Cf. Reichenbach*, 153 Wn.2d at 130-31.

We also conclude that failure to make the suppression motion was prejudicial. When the record demonstrates a motion to suppress material evidence would likely be granted, the failure to move for suppression is prejudicial. *State v. Rainey*, 107 Wn. App. 129, 136, 28 P.3d 10 (2001).

A search warrant may issue only upon a determination of probable cause. *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). An application for a warrant must state the underlying facts and circumstances on which it is based to facilitate a detached and independent evaluation of the evidence by the issuing magistrate. *State v. Smith*, 93 Wn.2d 329, 352, 610 P.2d 869 (1980). The affidavit in support of the search warrant must adequately show circumstances that extend beyond suspicion and mere personal belief that evidence of a crime will be found on the premises to be searched. *State v. Klinger*, 96 Wn. App. 619, 624, 980 P.2d 282 (1999) (citing *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981)).

Probable cause requires not only a nexus between criminal activity and the item to be seized but also a nexus between the item to be seized and the place to be searched. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). "Absent a sufficient basis in

12

fact from which to conclude evidence of illegal activity will likely be found at the place to be searched, a reasonable nexus is not established as a matter of law." *Id.* at 147.

*Thein* is on all fours in demonstrating the insufficiency of Detective Tucker's affidavit to establish probable cause for the second warrant. In *Thein*, the police executed a valid search warrant on a house containing a marijuana grow operation. During the search the police uncovered several copies of money orders from McKone (a suspect, living in the house) made out to Stephen Thein, bearing the notation "rent." Several individuals told the police that a man named "Steve" was McKone's landlord and one of the people who supplied McKone with marijuana. Thein did not reside at the house. In addition to the money orders, evidence relating to Thein found at the house included a box of nails addressed to Thein at his own residence address. It also included boxes of oil filters, one of which was marked "Toyota." Police determined that Thein owned a 1994 Toyota truck, a model that the oil filters fit.

The Supreme Court found that the nails and oil filter were innocuous and incapable of establishing a nexus between the grow operation and Thein's residence. It rejected the State's argument for a per se rule that a nexus is established "where there is sufficient evidence to believe a suspect is probably involved in drug dealing and the suspect resides at the place to be searched." *Id.* at 141. It agreed with Thein that even if police had probable cause to believe he was involved in a grow operation, there was no evidence connecting any illegal activity to his residence.

13

In light of *Thein* and other Washington cases establishing the nexus requirement, a motion challenging the existence of probable cause for the second search warrant was likely to be granted. A trial court ruling on the probable cause to support a magistrate's warrant sits in an appellate-like capacity, with its review limited to the four corners of the affidavit supporting probable cause. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Although deference is given to the magistrate's determination, the assessment of probable cause is a legal conclusion. *State v. Chamberlin*, 161 Wn.2d 30, 40, 162 P.3d 389 (2007). To repeat *Thein*: "Absent a sufficient basis in fact from which to conclude evidence of illegal activity will likely be found at the place to be searched, a reasonable nexus is not established as a matter of law."

Concluding that the motion to suppress would likely have been granted does not entirely answer the issue of prejudice, for we must still consider the impact on the trial of a decision excluding the evidence. The prejudicial effect of counsel's error is viewed against the backdrop of the evidence in the record. *State v. Hendrickson*, 129 Wn.2d 61, 80, 917 P.2d 563 (1996).

Without the fruits of the second search, the State's only evidence against Mr. Andrade was his name on a couple of items of mail addressed to him at the Carvo Road address where he formerly worked and lived, and the blue barrels seen at both the greenhouse (the former business location of the nursery) and the Ninth Avenue business address (the business address of the nursery at the time the warrant was served). The

14

circumstantial evidence against him, then, would be substantially reduced by a suppression decision in his favor.

In his affidavit of probable cause Detective Tucker had stated that a neighbor, John Ferry, had seen Mr. Andrade on the property a week before the grow operation was discovered but Mr. Ferry had written a letter to the court at the time of the hearing on the suppression motion stating he had been misunderstood. He was called as a defense witness at trial and testified that he had not seen Mr. Andrade at the Carvo Road property in 2010 or, as far as he could recall, in 2009. The State made no effort to impeach Mr. Ferry.

Because Mr. Andrade received ineffective assistance of counsel and the failure of representation was prejudicial, we reverse the judgment and sentence and remand the matter for retrial. Our disposition renders Mr. Andrade's other assignments of error moot.

Reversed and remanded for proceedings consistent with this opinion.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

I CONCUR:

_____
Kulik, J.

15

No. 30089-7-III

KORSMO, C.J. (concurring) — It was error under *Thein*[1] to issue the search warrant for the home and office addresses. I do not agree that counsel provided ineffective assistance since the evidence obtained at the defendant's home was more important to the defense case than for the prosecutor's case. Since the defendant challenged the warrants generally, I believe that he can pursue his *Thein* argument in this appeal. Accordingly, I concur in the result.

The State's case against Nibardo Andrade was quite strong—he owned the property where the grow operation was found and no one else was located there who could be tied to the crime. There were dominion and control papers there that further tied Mr. Andrade to the site.[2] Under those facts alone, the prosecutor had a pretty nice case and the defense, to have a realistic chance of escaping liability, would want to show that someone else grew the marijuana without Mr. Andrade's knowledge. Aware that the State had the rental agreements in hand and would likely introduce them (along with the other fruits of the house search) to further show defendant's control of the property, the

---

[1] *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999).

[2] There were also documents found there naming other people, but none of those people were ever reported to have been at the scene.

defense had an easy way to point to someone else as the perpetrator(s) of the grow

operation.[3] The documents would clearly be inadmissible hearsay if offered by Mr.

Andrade. Since they added little to the State's overall case, it was reasonable for defense

counsel to not raise the *Thein* argument in the event his challenge to the original warrant

failed to result in suppression of the grow operation itself.

Accordingly, I am not convinced that counsel erred by failing to make the specific

argument that *Thein* required suppression of the evidence from the two secondary

locations. However, counsel did challenge all of the warrants generally as lacking

probable cause and he also specifically attacked the two secondary warrants although on

other grounds. For those reasons, I think he can maintain the *Thein* challenge here as

simply a specific application of his probable cause argument. The necessary facts are in

the record due to the fact that he brought his suppression motion. Thus, his issue is

manifest and can be considered here. RAP 2.5(a); *State v. McFarland*, 127 Wn.2d 322,

899 P.2d 1251 (1995).

---

[3] If the prosecutor did not offer the documents, defense counsel may well have
been able to offer them during cross-examination of the detectives to impeach the State's
theory of the case.

2

No. 30089-7-III
State v. Andrade

The majority correctly demonstrates that the *Thein* problem exists here.

Accordingly, I concur in its conclusion that the evidence seized from the two secondary

locations should be suppressed and a new trial is required.


_____
Korsmo, C.J.

3