IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40195-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DEVIN C. CURTIS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Devin Curtis appeals the trial court's order denying her motion to withdraw her pleas of guilty to 10 counts of first degree possession of depictions of a minor engaged in sexually explicit conduct. She claims her trial counsel was ineffective by failing to move to suppress evidence of uncharged conduct. We reject her argument because, even though defense counsel likely could have successfully suppressed evidence of uncharged conduct, filing such a motion risked withdrawal of a favorable plea offer and the State adding additional charges.

FACTS

A woman notified the Glen Rock New Jersey Police Department (GRPD) of an online relationship between her 14-year-old daughter and a 32-year-old individual. An investigation revealed conversations and photos that were sexual in nature. The GRPD identified the 32-year-old adult as Devin Curtis, a resident of Clarkston, Washington. The GRPD contacted the Clarkston police department.

The Clarkston police department obtained a search warrant for the house where Curtis lived and all electronic devices capable of storing evidence of the crimes being investigated. Two days later, the Clarkston police arrived at the Clarkston house to serve the warrant. Curtis, who later claimed to be asleep, failed to answer the door. The officers contacted her mother, Terri Albertson, the owner of the house. Albertson left work, arrived at her house, and opened the door for the police.

The officers saw Curtis inside the house and asked her to take a seat in the living room. They provided her a written advisement of *Miranda*[1] rights, and she voluntarily signed the waiver. Curtis acknowledged the authenticity of the nude photos of the New Jersey girl, but said she did not know that the girl was underage. Curtis also admitted having photos of other girls engaged in sexual acts and having recently deleted those photos from her phone.

The officers conducted a search and discovered further sexually explicit material involving underage individuals, including 40 images and 10 videos of child exploitative material on her phone. The officers seized Curtis's cell phone, desktop computer, hard drives, and memory cards, which contained conversations of a sexual nature between Curtis and the New Jersey girl.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

During the search, and while Curtis was still at her mother's house,[2] Albertson told the police that her daughter had a laptop computer at an apartment in Pullman, Washington. Albertson told the police that she was a cosigner on the apartment lease, had a key, and could provide them with the laptop located in the apartment. Albertson explained that her daughter used the apartment while attending Washington State University. The police told Albertson that she was under no legal obligation to give them the laptop. Albertson said she understood and agreed to assist them. After the officers completed their search of the Clarkston house, Curtis was placed under arrest.

Later that day, Albertson met Pullman police at her daughter's apartment and gave them the laptop. A warrant was obtained to search the laptop, and a forensic search identified 14 photos of interest depicting nude and partially nude teen and preteen girls.

The State charged Curtis with sexual exploitation of a minor and 10 counts of possession of depictions of a minor engaged in sexually explicit conduct in the first degree. The basis for the possession charges was the images found on Curtis's cell

---

[2] The State disputes Curtis's claim that she was present during this conversation. Our review of the record shows that Curtis was present.

In a detective's application for a search warrant, he wrote that Curtis's mother told officers about the Pullman apartment as the officers searched for evidence in Albertson's house. In an earlier affidavit, the detective wrote that he removed Curtis from Albertson's house after he completed the evidence log, which presumably was after the officers completed their search.

phone. The material found on Curtis's Pullman laptop was not a basis for any of the charges.

*Procedural History*

The trial court appointed an attorney to represent Curtis. Curtis was transported to New Jersey for approximately two years in connection with a separate charge. Upon Curtis's return to Washington, the prosecution offered her a plea deal. Curtis discussed the offer with her appointed attorney and decided to hire private counsel. Following discussion between Curtis and private counsel, Curtis accepted the plea offer and pleaded guilty to the 10 possession charges. In return, the State dismissed the sexual exploitation charge.

Curtis's private counsel withdrew and appointed counsel reappeared as counsel of record. Curtis timely moved to withdraw her pleas of guilty and premised her motion on ineffective assistance of counsel. The trial court denied her motion and imposed a sentence consistent with the parties' plea deal.

Curtis appeals.

ANALYSIS

Curtis argues the trial court erred by denying her motion to vacate her guilty pleas because her trial counsel likely could have successfully suppressed the evidence found on her Pullman laptop. We agree with Curtis that a motion to suppress likely would have

been successful but conclude that she cannot establish either prong of her ineffective

assistance of counsel claim.

*Standard of Review*

We review a trial court's order on a defense's motion to withdraw a guilty plea for

abuse of discretion. *State v. Marshall*, 144 Wn.2d 266, 280, 27 P.3d 192 (2001). A trial

court abuses its discretion when its decision is manifestly unreasonable or is based on

untenable grounds or reasons. *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).

*Standard for Guilty Plea Withdrawal*

"The court shall allow a defendant to withdraw the defendant's plea of guilty

whenever it appears that the withdrawal is necessary to correct a manifest injustice."

CrR 4.2(f). Manifest justice is "'obvious, directly observable, overt, not obscure.'"

*State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991) (quoting *State v. Taylor*, 83 Wn.2d

594, 596, 521 P.2d 699 (1974)). The defendant must carry a "demanding standard to

justify withdrawal of the guilty plea." *In re Pers. Restraint of Ness*, 70 Wn. App. 817,

821, 855 P.2d 1191 (1993). A manifest injustice exists when a defendant is denied

effective assistance of counsel. *Taylor*, 83 Wn.2d at 597.

*Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel, a defendant must show that

(1) defense counsel's performance fell below an objective standard of reasonableness,

and (2) the deficiency prejudiced the defendant. *State v. McCollum*, 88 Wn. App. 977, 981, 947 P.2d 1235 (1997).

### 1.    Reasonable Performance

In ascertaining whether counsel acted reasonably, courts look to whether there was a conceivable, legitimate tactic explaining the decision. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). A lack of such a tactic is sufficient to rebut the presumption that counsel acted reasonably. *Id.*

Curtis cites multiple cases in support of her argument that counsel's refusal to move to suppress cannot be viewed as a reasonable, legitimate tactic. Beginning with *State v. Hamilton*, 179 Wn. App. 870, 320 P.3d 142 (2014), the defendant's counsel failed to move to suppress methamphetamine from a warrantless search. The court found no legitimate tactic in failing to do so given the potential benefit from the motion being granted and the absence of the risk if the motion was denied. *Id.* at 880. "If she prevailed, the charges would be dismissed. If the motion was denied, she could proceed to trial." *Id.*

In *State v. Rainey*, 107 Wn. App. 129, 134, 28 P.3d 10 (2001), the defendant was charged with and found guilty of possession of marijuana. The court found ineffective assistance of counsel where a motion to suppress would have also excluded the marijuana. *Id.* at 135-36.

6

And in *Reichenbach*, police officers illegally seized a bag of methamphetamine from the defendant. The court found ineffective assistance of counsel for a failure to move to suppress. 153 Wn.2d at 128. The court reasoned that "the baggie of methamphetamine was the most important evidence the State offered, yet counsel did not challenge its admissibility despite serious questions about the validity of the warrant upon which the search was based." *Id.* at 130-31.

The State argues these cases are distinguishable because the evidence discussed in the cases was foundational to the charges. We agree.

Here, the contents of the laptop were not used for any of the 11 charges against Curtis. Under the risk-benefit test discussed in *Hamilton*, the only potential benefit Curtis cites from a granted motion is enhanced bargaining power for plea negotiations. *Hamilton*, 179 Wn. App. at 880. The risk, on the other hand, is that the State could have withdrawn the plea offer. Br. of Resp't at 36.

Curtis argues that counsel was not on notice that the State might withdraw its plea offer. While the record does not indicate the State informed defense counsel of this risk, plea offers can be withdrawn at any time, and a defendant who chooses to file a motion to suppress also risks withdrawal of a favorable plea offer. We conclude that Curtis cannot satisfy the first prong of her ineffective assistance of counsel claim.

>            *2.      Prejudice*

To demonstrate prejudice, the defendant must show to a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

We first consider whether there is a reasonable probability that the motion to suppress would have been granted.  *State v. Klinger*, 96 Wn. App. 619, 629, 980 P.2d 282 (1999).  Article I, section 7 of the Washington Constitution "qualitatively differs from the Fourth Amendment [to the United States Constitution] and in some areas provides greater protections than does the federal constitution." *State v. Surge*, 160 Wn.2d 65, 70, 156 P.3d 208 (2007).  It "protects against unlawful intrusions into private affairs." *State v. Libero*, 168 Wn. App. 612, 617, 277 P.3d 708 (2012).

Warrantless seizures are unlawful under the Fourth Amendment unless an exception applies.  *State v. Grande*, 164 Wn.2d 135, 141, 187 P.3d 248 (2008).  Consent is a valid exception to the warrant requirement.  *Reichenbach*, 153 Wn.2d at 131.  The State bears the burden of proof in showing that valid consent was provided for a warrantless search.  *Libero*, 168 Wn. App. at 618.

### a. Search by Police Agent

Fourth Amendment protections against warrantless searches only apply to searches by state actors. *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994). A private person is treated as a state actor when (1) the police knew of and acquiesced in the search, and (2) the searching party intended to assist law enforcement. *Id.* (quoting *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982)).

Here, Curtis argues, and the State does not dispute, that Albertson was a state actor for the purposes of the Fourth Amendment. Albertson intended to assist law enforcement when she informed the police about the laptop in the Pullman apartment.

Next, Curtis argues, and the State does not dispute, that law enforcement knew of and acquiesced in the search. The Pullman officers who responded to a request from the Clarkston police department met with Albertson at the Pullman apartment and took custody of the computer. The police not only acquiesced but made a conscious effort to retrieve the laptop from the apartment. We conclude that Albertson was a state actor for purposes of the Fourth Amendment.

### b. Common Authority

The State argues that Albertson had authority to consent to the search of the Pullman apartment under the common authority rule. To establish lawful consent through the common authority rule, the State must show: "(1) 'a consenting party must be

able to permit the search in his own right' and (2) 'it must be reasonable to find that the defendant has assumed the risk that a co-occupant might permit a search.' " *State v. Thompson*, 151 Wn.2d 793, 804, 92 P.3d 228 (2004) (quoting *State v. Mathe*, 102 Wn.2d 537, 543-44, 688 P.2d 859 (1984)).

The State argues that because Albertson cosigned the lease and possessed a key to the apartment, her consent to the search was valid. Curtis responds that these facts are insufficient to grant Albertson common authority. We agree with Curtis.

A mere property interest is insufficient to imply common authority. *State v. Leach*, 113 Wn.2d 735, 739, 782 P.2d 1035 (1989) (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974)). "The touchstone of the inquiry is that the person with common authority must have free access to the shared area and authority to invite others into the shared area. That access must be significant enough that it can be concluded that the nonconsenting co-occupant assumed the risk that the consenting co-occupant would invite others into the shared area." *State v. Morse*, 156 Wn.2d 1, 10-11, 123 P.3d 832 (2005).

Here, the evidence is insufficient to show that Albertson had authority to invite others into the Pullman apartment. Albertson described the Pullman apartment as where her daughter lived when attending Washington State University. There is no indication that Albertson visited the apartment or that she could even enter it without first asking her

10

daughter.  For these reasons, we conclude that Albertson did not have common authority

to permit a search of the apartment.[3]  It follows that had defense counsel filed a motion to

suppress the evidence from the Pullman laptop, the motion likely would have been

granted.

Curtis argues that suppression of the laptop would have eliminated the threat of

additional charges during plea negotiations and would have given her leverage in plea

negotiations or perhaps even have resulted in her going to trial.  Her argument is overly

speculative.

We see no reason to believe that suppression of the uncharged evidence would

have had any conceivable effect on Curtis's ability to obtain a better plea deal.  The State

had numerous other photos that could have supported additional possession charges.  Had

defense counsel successfully suppressed the Pullman laptop evidence, Curtis's best-case

scenario was that the State might not have kept its plea offer open; but the State could

have, and likely would have, revoked its plea offer and possibly added additional charges.

We conclude that Curtis cannot satisfy the second prong of her ineffective assistance of

---

[3] Even were we to conclude that Albertson had common authority, law enforcement's failure to obtain consent from Curtis, who also was present at the house at this time, renders the warrantless search invalid.  *See Morse*, 156 Wn.2d at 13 (when a cohabitant with equal or greater rights in the premises is present, police must also obtain consent from that person before a warrantless search).

11

No. 40195-2-III
*State v. Curtis*

counsel claim. For these reasons, we also conclude the trial court did not abuse its discretion by denying her motion to withdraw her guilty pleas.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Staab, J.

Murphy, J.