# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73518-7-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JESSE DEAN LEDERLE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 3, 2016 |
| | ) | |

SPEARMAN, J — Jesse Lederle challenges his convictions of one count of attempting to elude and one count of possession of a stolen motor vehicle. He contends the State failed to establish the proper foundation for admission of dog tracking evidence. But Lederle failed to object to the evidence at trial, and on appeal, he does not allege that admission was a manifest constitutional error. We therefore decline to consider the issue for the first time on appeal and affirm.

## FACTS

On the evening of February 23, 2015, Mount Vernon Police Officer Chester Curry responded to a report of suspicious activity in a business parking lot. Curry had just stepped out of his patrol car to talk to the reporting witness when he saw a large white pickup truck speed by at about 50 miles per hour (mph). The headlights were out, and the truck appeared to have a broken tire. Curry later learned that the truck had been stolen.

Curry got into his patrol car and pursued the truck eastbound on Stewart Street. Curry initially lost sight of the truck, but saw it again as it neared Hoag Road

at a speed of 60 to 75 mph. Curry accelerated to about 70 mph and eventually began to close in. By the time Curry approached, however, the truck had slowed considerably. Sparks were flying from the rear, and pieces of tire lay in the street.

Curry activated his overhead lights and followed for about two blocks as the truck turned into a cul-de-sac and stopped. Curry remained in his patrol car about 50 feet behind the truck and watched as a man exited from the driver's door and then fled through a neighboring yard. Curry was unable to see the man's face, but described him as Caucasian, with a medium build and height. Curry noticed "[b]right white" on the man's tee-shirt.[1] Curry testified that the suspect had the same height and build as Lederle.

Curry waited in his patrol car for a few minutes until Officer Green arrived. The two officers then confirmed that no one else was in the pickup. Other officers set up a containment of the area and called for a canine unit.

Sometime between 10:30 and 11:00 p.m., Melinda Mason was smoking a cigarette on the deck of her Mount Vernon home. She watched as a Caucasian man wearing a blue shirt came out from a neighbor's building and walked across her property. After noticing the flashing lights from police activity on a neighboring street, Mason called 911 to report the suspicious man.

About 20-30 minutes after the truck stopped, Officer Jason Nyhus, a K-9 handler with the Whatcom County Sheriff's Office, arrived with his dog Hyde. Nyhus had 16 years of experience as a canine officer and had worked with three police dogs during that period. Nyhus explained that in order to certify a handler to deploy a

---

[1] Verbatim Report of Proceedings (VRP) at 107.

police dog, the State of Washington requires the handler and each dog to participate in 400 hours of training during a 12-week program.

During his career, Nyhus deployed police dogs "probably thousands"[2] of times. Nyhus had worked with Hyde for about a year. Hyde was "generalist police dog"[3] trained "to track humans, do area tracking for humans, building searches, criminal apprehension ... [and] searches for articles or evidence."[4] Nyhus testified that Hyde had done "very well" in tracking during training "and in real street application."[5] Hyde had participated in several hundred tracks during the year he was with Nyhus.

Officer Curry accompanied Nyhus to Mason's house, where the suspect was last seen. Mason pointed out the spot where the man walked over her lawn. Because no one else had been in the area, the lawn was "totally uncontaminated."[6] Hyde immediately began to track and quickly led Curry and Nyhus through the neighboring yards in a residential area. At various spots along the way, Nyhus was able to see footprints in the grass.

Hyde led Nyhus into a wooded area and then to a man who was concealed among some tree roots and partially surrounded by blackberry bushes. Curry could see a pair of legs behind the bushes.

Nyhus gave several warnings about the police dog and ordered the man, later identified as appellant Lederle, to come out. When Lederle failed to comply, Nyhus gave Hyde the command to bite and hold. After Hyde bit him on the forearm, Lederle

---

[2] VRP at 67.
[3] Id.
[4] Id.
[5] Id. at 68.
[6] Id. at 71.

flailed his arms and repeatedly asked why he was being attacked. Lederle claimed he was just sleeping at the spot.

The area was surrounded by blackberry bushes, and officers "had to climb over, jump over, and push through blackberries getting to [Lederle]. . . ."[7] Lederle continued to struggle as Curry unsuccessfully attempted to handcuff him. After Nyhus directed Hyde to bite Lederle in the buttocks, Curry was able to handcuff Lederle and take him into custody.

Lederle asked Curry, "Why are you bothering me? I'm transient and sleeping in the woods."[8] Lederle also asked why the officers could not leave him alone. Neither Curry nor Nyhus saw any of Lederle's possessions in the area. Lederle was wearing a dark-colored shirt with large white letters.

Nyhus and Hyde returned to the pickup truck, where Hyde began a second track. Hyde led Nyhus along the route that the suspect took from the truck, eventually reaching the spot where the original track began on Mason's lawn.

At the hospital, Nyhus observed that Lederle had "very minor scratches and abrasions" consistent with the dog bites. Lederle also had scratches and cuts on his hands and forearm that appeared to be from brush or blackberry bushes. Nyhus and Curry received similar cuts from the blackberry bushes during Lederle's arrest.

At some point while officers were pursuing Lederle, a person called 911 and reported shots fired at a location in Mount Vernon. The caller hung up immediately. When the 911 operator called the number back, no one answered. A police detective

---

[7] Id. at 77.
[8] Id. at 125.

later determined that the call came from the cell phone recovered from Lederle at the time of his arrest.

The State charged Lederle with possession of a stolen motor vehicle, attempting to elude a pursuing police vehicle, false reporting, and resisting arrest. Lederle pleaded guilty to the false reporting and resisting arrest charges. Following a bench trial, the trial court found Lederle guilty as charged of the possession and attempting to elude counts. Based on an offender score of 19, the court sentenced Lederle to concurrent standard-range terms totaling 57 months.

## DISCUSSION

Lederle contends that the trial court erred in admitting the dog tracking evidence because the State failed to lay the required foundation. He argues that without the dog tracking evidence, the evidence was insufficient to support his convictions.

In Washington, dog tracking evidence is admissible in a criminal prosecution if there is a proper foundation showing the qualifications of the handler and the dog. State v. Loucks, 98 Wn.2d 563, 566, 656 P.2d 480 (1983). In order to establish a sufficient foundation, the proponent must demonstrate:

> (1) the handler was qualified by training and experience to use the dog, (2) the dog was adequately trained in tracking humans, (3) the dog has, in actual cases, been found by experience to be reliable in pursuing human track, (4) the dog was placed on track where circumstances indicated the guilty party to have been, and (5) the trail had not become so stale or contaminated as to be beyond the dog's competency to follow.

Id. (quoting State v. Socolof, 28 Wn. App. 407, 411, 623 P.2d 733 (1981)).

But Lederle failed to object to the evidentiary foundation or to the admission of the dog tracking evidence at trial. Generally, this court will not consider an evidentiary error raised for the first time on appeal. State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Trial counsel's failure to object to an alleged error "robs the court of the opportunity to correct the error and avoid a retrial." State v. Powell, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). Nor has Lederle alleged a manifest constitutional error that we will consider for the first time on appeal. See RAP 2.5(a); State v. Newbern, 95 Wn. App. 277, 288, 975 P.2d 1041 (1999) (failure to lay an adequate evidentiary foundation does not create a manifest constitutional error). Accordingly, we decline to consider the alleged evidentiary error for the first time on appeal.

Affirmed.

Spearman, J.

WE CONCUR:

Appelwick, J.

Cox, J.

-6-